
RECEIVED
JUL 26 2024
BY MAIL

FILED
JUL 26 2024
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DARIUS D. COBB,
  Movant Pro Se,

v.          Case No. 4:22-CR-00134 HEA

UNITED STATES OF AMERICA
  Respondent.

### MOTION FOR RELIEF UNDER 28 U.S.C. SECTION 2255

Here comes Darius D. Cobb respectfully moving this honorable Court to vacate, set aside, or correct his conviction or sentence on grounds of ineffective assistance of counsel (Massaro v. United States, 538 U.S. 300, 504 (2003)).

### BACKGROUND

Cobb received a multicount indictment on 3/09/2022, charging him with five counts for Aiding and Assisting in the Preparation of False and Fraudulent Returns in violation of 26 U.S.C. Section 7206(2). Patrick S. Kilgore was assigned by the Court as Cobb's counsel for all of the conviction proceedings, and was reassigned for Cobb's appeal proceedings.

On 04/04/2023 Cobb pled guilty as to counts three and five, as part of a plea deal with the Government. Count 3 on the Guilty Plea Agreement said that "On or about April 13, 2018, the defendant prepared and filed a U.S. Individual Income Tax Return (Form 1040) for tax year 2017 in the name of JP .... The tax return prepared and filed by the defendant in the name JP for 2017 constituted a false claim for a refund in the amount of $642.00 which was paid out by the IRS." See ECF 44 at 3. Then Count 5 on the Guilty Plea Agreement said that "On or about February 4, 2019, the defendant prepared and filed a U.S. Individual Income Tax Return (Form 1040) for 2018 in the name of DE .... The tax return prepared and filed by the defendant in the name DE for 2018 constituted a false claim for a refund in the amount of $6,811.00 which was paid out by the IRS." See ECF 44 at 4. The Guilty Plea Agreement also mentioned that Cobb's uncharged prior conduct "caused a loss to the Internal Revenue Service of approximately $517,021.00" (ECF 44 at 3).

## CERTIFICATE OF SERVICE

I, Darius D. Cobb, hereby certify that on this _23_ day of July, 2024, I did place three copies of the enclosed "MOTION FOR RELIEF UNDER 28 U.S.C. SECTION 2255", in the prison's certified mailing system addressed to:

Clerk of the Court
United States District Court
111 S. Tenth Street,
St. Louis, MO 63102

Furthermore, I hereby certify that I did place one copy of the enclosed "MOTION FOR RELIEF UNDER 28 U.S.C. SECTION 2255", in the prison's certified mailing system addressed to:

Jennifer J. Roy
United States Attorneys Office
111 S. Tenth Street, 20th Floor
St. Louis, MO 63102

Signed under the penalty of perjury this _23_ day of July, 2024.

_[signature]_

Darius D. Cobb #97101-509
FCI Pekin
P.O. Box 5000
Pekin, IL 61555

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by and intervening arrest (i.e. the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument, or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence. See also [Section] 4A1.1(d). For purposes of applying [Section] 4A1.1(a),(b), and (c), if prior sentences are treated as a single sentence, use the longest sentence of imprisonment if concurrent sentences were imposed. If Consecutive sentences were imposed, use the aggregate sentence of imprisonment.

As mentioned above, Cobb was sentenced on the same day for Docket Nos. 2101R-01033-01 and 2101R-00512-01 on 12/17/2001, and for Docket No. 2101R-03739-01 on 12/27/2001. But the only reason for the separation of time in sentencing was because the St. Louis County Court chose to sentence Cobb on the evening of 12/17/2001 and then take a break for the Christmas holidays, to then resume his sentence on 12/27/2001 and run all three sentences concurrently, and then parole him on all three sentences at the same time on 12/10/2002. There were no intervening arrests in between each sentence either and Cobb's sentence "resulted from offenses contained in the same charging instrument." Therefore, if the assessment of the three sentences in question would have survived the two previous challenges, then at best they could only produce a 2 point assessment under 4A1.1(b) instead of 9 points under 4A1.1(a).

Cobb was also improperly assessed 3 criminal history points under 4A1.1(a) for his Possession of a Controlled Substance sentence (Docket No. 1111-CR05133-01). On 02/20/2013, Cobb was sentence to seven years incarceration on this charge, but the execution of the sentence was suspended and he was placed on five year probation. On 11/22/2013, Cobbs probation was revoked and he was incarcerated for the sentence, but on 09/14/2014, he was released on parole. In other words, Cobb was not incarcerated for "one year and one month" as required by 4A1.1(a), and as defined by 4A1.2(b)(1-2), which were quoted above. Therefore, Cobb was improperly assessed 3 criminal history points for his Possession of Controlled Substance sentence under 4A1.1(a), when he should have been assessed 2 points only under 4A1.1(b), which instructs to "Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a)"

6

Finally, Cobb received 1 additional criminal history point for Driving While License Suspended (Docket No. CR-2016-0487842), which was improperly assessed under 4A1.1(c). Section 4A1.2(c)(1) says:

> Sentences for the following prior offenses and offenses similar to them by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense: .... Driving without a license or with a revoked or suspended license ...

On 06/24/2016 Cobb was sentenced to 30 days jail and a $200 fine for Driving While License Suspended, but his sentence of incarceration was suspended and he did not serve 30 days at the county jail. Cobb does not recall the exact date of his release for his quick visit to the county jail, but records from the Municipal Court of Overland Park in Kansas, and their county jail, would factually prove that Cobb did not serve 30 days of imprisonment. Section 4A1.2(b)(2) says that "If part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." Therefore, because Cobb's 30 day sentence was suspended prior to its completion, he was erroneously assessed one point under 4A1.1(c), which requires a "term of imprisonment of at least thirty days" in order to add a point.

But beyond the improper application of term of imprisonment for the Driving While License Suspended, Cobb should not have been assessed for that sentence because it was erroneously issued by the Missouri Division of Child Support Enforcement and therefore erroneously issued by the Municipal Court. At the time, Cobb's license had been suddenly suspended, without his knowledge, because of failing to pay Child Support for a child that was proven not to be Cobb's through a DNA test. The child support was dismissed in St. Louis City Civil Court Division with prejudice in August of 2018 (Case No. 20222524). The Missouri Child Support Enforcement Division issued a termination order to reinstate Cobb's driver license and removed all debts associated with the case on 8/28/2018 by issuing judge/official Rufus Ayers. Cobb is currently in the process of expunging the misdemeanor record from Overland Park, KS. Therefore, Cobb could not have been assessed for a fraudulent conviction that is verifiable to be fraudulent.

Cobb argues that a proper assessment of his previous convictions would only produce a Criminal History of 5, which would place him on Criminal History Category 3. A proper assessment of Cobb's criminal history would include:

7

1 point for the 10/04/2007 Criminal Nonsupport (Docket No. 2106R-04248-01) under 4A1.1(c).

2 points for the 09/26/2011 Possession of a Controlled Substance (Docket No. 1111-CR05133-01) under 4A1.1(b).

1 point for the 09/21/2013 Failure to Return to confinement and Assault of a Corrections Officer (Docket No. 1311-CR05693 under 4A1.1(c).

1 point for the 01/15/2020 Domestic Assault (Docket No. 20SL-CR00251-01) under 4A1.1(c).

Any other calculation would produce an inflated criminal history that would recommend a sentence range well above the statutory maximum 3 year sentence that 26 U.S.C. Section 7206(2) would allow, even in a multicount indictment.

The U.S. Sentencing Commission warns against the multicount manipulation that Cobb experienced. The "Introductory Commentary" for the 2023 Federal Sentencing Guidelines Manual states that "the Commission has written its rules for the treatment of multicount convictions with an eye toward eliminating unfair treatment that might flow from count manipulation." Id. Ch.1 Pt. A at 4(a). Then the commentary provides an example to demonstrate that the guidelines treat multi-count indictments the same as single-count indictments, recommending appropriate punishment. The Sentencing Commission states that "the guidelines treat a three-count indictment, each count of which charges sale of 100 grams of heroin or theft of $10,000, the same as a single-count indictment charging sale of 300 grams of heroin or theft of $30,000." Id. Then the Commission states that "a sentencing court may control inappropriate manipulation of the indictment through use of its departure power." Id. Here Cobb argues that his two 7206(2) counts, count three for a "false claim for a refund in the amount of $642.00" and count five for a "false claim for a refund in the amount of $6,811.00" (ECF 44 at 4), should have produced a maximum sentence of 3 years total, in the same way as one 7206(2) count for a false claim in the amount of $7,453 would have produced a statutory maximum sentence of 3 years.

Furthermore, the "Introductory Commentary" for the 2023 Federal Sentencing Guidelines Manual dedicates a section to "Multi-Count Convictions." In it the Commission explains that:

> A defendant who assaults others during a fight, for example, may warrant more punishment if he injures ten people than if he injures one, but his conduct does not necessarily warrant ten times the punishment. If it did, many of the simplest offenses, for reasons that are often fortuitous, would lead to sentences of life imprisonment--sentences that neither just deserts nor crime control theories of punishment would justify. Id. Ch.1 Pt. A at 4(e).

8

2106R-04248-01). All three sentences ran concurrently with each other. However, on 12/10/2002, less than a year of being incarcerated, Cobb was released on parole for the three sentences mentioned above (Docket Nos. 2101R-01033-01, 2101R-00512-01, and 2106R-04248-01). In other words, the three sentences were not "imposed within fifteen years of the defendant's commencement of the instant offence", which was 4/13/2018 according to Count 3 of Guilty Plea Agreement (ECF 44 at 3). Furthermore, because Cobb was released on parole for the three sentences on 12/10/2002, he was not "incarcerated during any part of such fifteen-year period" prior to Cobb's "commencement of the instant offense" 4A1.2(e)(1). In other words, the three sentences in question could not have been assessed nor presented before this Court, and the 9 points that were added to Cobb's Criminal History for them should be removed.

But even in the unlikely event the three sentences in question would have been accepted as part of Cobb's Criminal History, Cobb still would have been improperly assessed for other reasons. Cobb did not serve a term of imprisonment required by the 4A1.1(a) guideline that he was assessed under for the three sentences in question. Section 4A1.1(a) says: "Add 3 points for each prior sentence of imprisonment exceeding one year and one month." And section 4A1.2(b)(1-2) says:

> (1) The term "sentence of imprisonment" means a sentence of incarceration and refers to the maximum sentence imposed. (2) If part of a sentence of imprisonment was suspended, "sentence of imprisonment" refers only to the portion that was not suspended.

Cobb was sentenced for Docket Nos. 2101R-01033-01 and 2101R-00512-01 on 12/17/2001, and for Docket No. 2101R-03739-01 on 12/27/2001. However, Cobb was released on parole for his three concurrently running sentences on 12/10/2002, which was a term of imprisonment of less than a year (from 12/17/2001 to 12/10/2002). Therefore, Cobb was erroneously assessed under 4A1.1(a), because he was not incarcerated for "one year and one month" as required by 4A1.1(a), and as defined by 4A1.2(b)(1-2). In sum, the three sentences in question could not have been assessed nor presented before this Court.

But even if somehow the three sentences in question would still prevail in taking part on Cobb's Criminal History assessment, Cobb still would be improperly assessed, because the three sentences should have been treated as a single sentence, at best. Section 4A1.2(a)(2) says:

5

ARGUMENT

In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1948), the Supreme Court set forth the standard to apply for ineffective assistance of counsel claims. In Strickland, the Supreme Court established a two prong test, which requires Movant to show that (1) Counsel's performance was deficient; and (2) that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. Here Cobb will present two claims of ineffective assistance of counsel with specificity, supported by facts and arguments, which will show that his counsel's performance was indeed deficient, and that the errors counsel Kilgore made seriously prejudiced Cobb. Furthermore, Cobb will also show in his claims that had it not been for his counsel's errors, he would have received a lower sentence.

CLAIM 1:

Cobb's counsel provided ineffective assistance by failing to investigate, object, or argue that he was improperly assessed Criminal History points and Criminal History Category in the PSR prior to sentencing and at sentencing, and had he objected to the improper assessment Cobb would have received a lower sentence.

Cobb was improperly assessed 9 criminal history points for three prior sentences that were older than the "Applicable Time Period" listed on Section 4A1.2(e)(1) of the United States Sentencing Guidelines, which says:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

On 12/17/2001, after Cobb's probation was revoked on the case for Passing a Bad Check - Over $150 (Docket No. 2101R-01033-01), he was sentenced to five years incarceration, and on the case for Fraudulent Use of Credit/Debit Device (Docket No. 2101R-00512-01) to six years incarceration. And on 12/27/2001, Cobb was sentenced to five years incarceration for Criminal Nonsupport (Docket No.

4

03/18/2016 (Age 44) Driving While License Suspended (M); Municipal Court, Overland Park, KS; Docket No. CR-2016-0487842 06/24/2016: Sentenced to 30 days jail; fined $200. 4A1.1(c) 1 point.

01/15/2020 (Age 48) Domestic Assault - 4th Degree (M); Circuit Court, St. Louis County, MO; Docket No. 20SL-CR00251-01 06/03/2021: Sentenced to one year jail; execution of sentence suspended and placed on two years probation; on 06/03/2023, probation completed. 4A1.1(c) 1 point.

Before Cobb's sentence, his Offence Level was 17, his Criminal History assessment was 16, and his Criminal History Category was 6, which recommended a sentence between 51-63 months' imprisonment. Therefore, on 10/10/2023, Cobb was sentenced to a total term of 51 months of imprisonment. The sentence consisted of 36 months on each of Counts 3 and 5, to be served concurrently, except for 15 months on Count 5 that would be run consecutively to Count 3. Cobb also received a term of 1 year Supervised Release, a Special Assessment in the amount of $200, and Restitution in the amount of $85,584 (as agreed on the Guilty Plea Agreement). See ECF 65.

Finally, the Guilty Plea Agreement included a waiver of appeal and post-conviction rights. The Guilty Plea Agreement waved all non-sentencing issues, and said that "the defendant herby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category." The Guilty Plea Agreement also waved Habeas Corpus rights, "except for claims of prosecutorial misconduct or ineffective assistance of counsel." See ECF 44 at 7.

Prior to sentencing, Cobb's counsel, Mr. Kilgore, did not file any objections to the Criminal History calculations and Criminal History Category from the PSR, despite of Cobb's verbal and text messages requesting for counsel to object. At sentencing, Cobb's counsel did not object to the Criminal History points calculations and Criminal History Category, despite of Cobb's verbal request for counsel to object. Re-assigned as Cobb's counsel on appeal, Mr. Kilgore chose to appeal the excessive length of Cobb's sentence, but again failed to object the Criminal History points calculations and the Criminal History Category. In fact, Cobb's counsel chose to appeal grounds that Cobb could not even appeal due to his plea agreement. Naturally, Cobb's appeal was dismissed. Therefore, Cobb now files this 2255 motion to argue ineffective assistances of trial and appeal counsel.

The Guilty Plea Agreement also included a section about Cobb's Offense Level. Cobb's base Offense Level was 18 as found in U.S.S.G. Section 2T1.4(a)(1) and 2T4.1(G) because the tax loss was more than $250,000 but less than $550,000. Two levels were then added pursuant to section 2T1.4(b)(1)(B) because Cobb was in the business of preparing tax returns. Finally, three levels were deducted for Acceptance of Responsibility pursuant to Section 3E1.1(a) and (b), so the Total Offence Level was 17. See ECF 44 at 5-6.

The Guilty Plea Agreement did not include a section about Cobb's Criminal History. Instead, the Guilty Plea Agreement said that "The determination of the defendant's Criminal History Category shall be left to the Court. Either Party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category." See ECF 44 at 6. As set forth in the PSR (ECF 51), Cobb's Criminal History assessment of 16 included the following convictions:

05/24/1996 (Age 24) Passing a Bad Check - Over $150 (F); Circuit Court, St. Louis County, MO; Docket No. 2101R-01033-01 02/17/1999: Sentenced to five years incarceration; execution of sentence suspended and placed on three year probation; on 06/13/2000, probation suspended; on 12/17/2001, probation revoked and sentenced order executed, concurrent with Docket Nos. 2101R-05090-01 and 2101R-03739-01; on 12/10/2002, released on parole; on 08/09/2005, parole return - work release; on 12/21/2005, re-released on parole; on 06/10/2007, parole discharged. 4A1.1(a) 3 points.

08/13/2001 (Age 30) Criminal Nonsupport (F); Circuit Court, St. Louis County, MO; Docket No. 2101R-03739-01 12/27/2001: Sentenced to five years incarceration, concurrent with Docket Nos. 2101R-00512-01 and 2101R05090-01; on 12/10/2002, release on parole; on 08/09/2005, parole return - work release; on 12/21/2005, released from work release program; on 06/10/2007, parole discharged. 4A1.1(a) 3 points.

11/15/2000 (Age 29) Fraudulent Use of Credit/Debit Device (F); Circuit Court, St. Louis County, MO; Docket No. 2101R-00512-01 12/17/2001: Sentenced to six years incarceration, concurrent with Docket Nos. 2101R-05090-01 and 2101R-05139-01; on 12/10/2002, release on parole; on 08/09/2005, parole return - work release; on 12/21/2005, re-released on parole; on 06/10/2007, parole discharged. 4A1.1(a) 3 points.

10/04/2007 (Age 36) Criminal Nonsupport (F); Circuit Court, St. Louis County, MO; Docket No. 2106R-04248-01 10/17/2008: Imposition of sentence suspended and placed on five years probation; on 10/18/2013, probation discharged. 4A1.1(c) 1 point.

09/26/2011 (Age 40) Possession of a Controlled Substance (F); Circuit Court, St. Charles County, MO; Docket No. 1111-CR05133-01 02/20/2013: Sentenced to seven years incarceration; execution of sentence suspended and placed on five year probation; on 11/22/2013, probation revoked and sentence ordered executed; on 09/15/2014, released on parole; on 10/29/2017, parole discharged. 4A1.1(a) 3 points.

09/21/2013 (Age 42) Ct. 1: Failure to Return to Confinement (M) Ct. 2: Assault of a Corrections Officer - 3rd Degree (M); Circuit Court, St. Charles County, MO; Docket No. 1311-CR05693 05/13/2014: Sentenced to 30 days jail on each count. 4A1.1(c) 1 point.

Here Cobb argues that this logic applies to his case because although he pled guilty to two 7206(2) counts "his conduct does not necessarily warrant [almost 1.5] times the punishment," resulting in an excessive 51 month sentence.

Cobb mentioned all the facts discussed above regarding the five sentences that were erroneously assessed to his counsel, Mr. Kilgore, but he failed to investigate, object, or argue any of the issues presented above when the PSR was drafted. The records from this District Court verify that Cobb's counsel did not submit any written objections, despite of Cobb's verbal and text requests. At sentencing, Cobb's counsel did not object to the Criminal History or the Criminal History Category either, despite of Cobb's verbal request for counsel to object. Had Mr. Kilgore objected to the erroneous assessment of Cobb's Criminal History and Criminal History Category prior to sentencing or at sentencing, then the 11 points that Cobb received erroneously, for the five sentences mentioned above, would not have been counted. Cobb would have been assessed a Criminal History of 5, and a Criminal History Category of 3, with an Offence Level of 17, which would recommend a sentence between 30-37 months. Here Cobb argues that (1) Mr. Kilgore's performance was deficient, due to his failure to object to the improper assessment of his Criminal History and Criminal History Category in the PSR, before the sentencing and at sentencing; and that (2) Mr. Kilgore's errors were so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and had it not been for Mr. Kilgore's errors, Cobb would haver received a lower sentence, had Mr. Kilgore made the objections and arguments presented here in Claim 1.

CLAIM 2:

Cobb's counsel provided ineffective assistance by appealing issues that Cobb had agreed not to bring on appeal, as part of his plea agreement, and for failing to investigate, object, or argue that he was improperly assessed Criminal History points and Criminal History Category, which Cobb could contest on appeal, and if counsel had appealed those issues Cobb would have received a lower sentence.

9

Stated simply, Cobb requested that his counsel, Mr. Kilgore, appeal the Criminal History points and Criminal History Category for the same erroneous assessment arguments presented in Claim 1, for the five sentences in question there. Again Cobb argues that (1) Mr. Kilgore's performance was deficient due to his failure to present the improper assessment of his Criminal History and Criminal History Category on appeal, and due to appealing the length of Cobb's sentence, which was an issue that Cobb had agreed not to bring on appeal; and that (2) Mr. Kilgore's error's were so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and had it not been for Mr. Kilgore's errors, Cobb would have received a lower sentence, had Mr. Kilgore appealed the issues presented in Claim 1.

## EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL REQUEST

An evidentiary hearing is necessary because factual disputes exist. United States v. Seller, 773 F.3d 927, 929 (8th Cir. 2014). The record is sufficient to verify that Cobb was improperly assessed 9 Criminal History points for the three prior sentences for Passing a Bad Check - Over $150 (Docket No. 2101R-01033-01), Fraudulent Use of Credit/Debit Device (Docket No. 2101R-00512-01), and Criminal Nonsupport (Docket No. 2106R-04248-01) because the PSR shows that Cobb was released on parole on 12/10/2002. The record is also sufficient to verify that Cobb was improperly assessed 3 Criminal History points under 4A1.1(a), instead of 2 points under 4A1.1(b), for the Possession of a Controlled Substance (Docket No. 1111-CR05133-01) because the PSR shows that Cobb's sentence was suspended, and when his probation was revoked he was incarcerated for less than a year, from 11/22/2013 to 09/15/2014, and then released on parole.

However, the record is not sufficient to show that Cobb made verbal and text requests to his counsel, Mr. Kilgore, to investigate, object, and argue the improper assessment of Cobb's Criminal History and Criminal History Category, before sentencing, during sentencing, and on appeal. The record is also not sufficient to show that Cobb did not serve 30 days in county jail for the Driving While License Suspended (Docket No. CR-2016-0487842); nor is it sufficient to show that the child support violation, for a child that was not Cobb's, which caused the suspension of his license, was later dismissed with prejudice and his license was reinstated.

Therefore, Cobb respectfully requests an evidentiary hearing on the above mentioned factual disputes, and Cobb also requests the appointment of counsel to represent him in the evidentiary hearing process and the resentencing process. Here the appointment of counsel is required for the interest of justice (Hoggard v. Purkett, 29 F.3d 469, 471 (8th Cir. 1994)), and because an evidentiary hearing is needed (Rule 8(c) of the Rules Governing Section 2255 Proceedings).

## RESENTENCING AGREEMENT

The ineffective assistance of counsel, for the erroneous assessment of Cobb's Criminal History and Criminal History Category, and the multicount manipulation that Cobb experience, which all produced an excessive sentence well above the statutory maximum sentence for 7206(2) counts, merits resentencing. Cobb has argued that a proper assessment of his previous convictions would produce a Criminal History of 5, and a Criminal History Category of 3, with an Offense Level 17, which would recommend a sentence between 30-37 months.

Cobb has requested an evidentiary hearing because factual disputes exist. However, Cobb is willing to wave his evidentiary hearing and appointment of counsel requests, if the Government states in its Response that it does not oppose to Cobb being resentenced to no more than 36 months, the statutory maximum for a 7206(2) count, and this honorable Court agrees to a sentence between 30-36 months, to remedy the ineffective assistance of counsel claims presented in this motion. The purpose of such agreement would be to save precious resources from the Government and this Court, and to prevent tax payer dollars being spent to further litigate this case. Specially since this case involves a fraud in the amount of $7,453, which is what Cobb pled guilty to, and since Cobb would prevail in an evidentiary hearing, which would result in resentencing.

## 3553(a) FACTORS AND SUGGESTED SENTENCE

When this honorable Court chooses to resentences Cobb, it will evaluate the 3553(a) factors, including the nature and circumstances of the offense; the history and characteristics of the defendant; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from future crimes

11

from Cobb; and to provide Cobb with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Here Cobb argues that resentencing him to a suggested sentence of 30 months imprisonment, 1 year Supervised Release, a Special Assessment in the amount of $200, and Restitution in the amount of $85,584 (as agreed on the Guilty Plea Agreement), would satisfy all the 3553(a) factors. In support of this argument Cobb presents the following cases of similarly situated individuals as reference:

> United States v. Brian Keith Ellefsen, and United States v. Mark Edward Ellefsen, 2008 U.S. Dist. LEXIS 57521 (W.D. Mo., 7/30/2008)
> Brian Keith Ellefsen and Mark Edward Ellefsen were convicted of conspiracy to defraud the United States in violation of 18 U.S.C. Section 371, by obstructing the Internal Revenue Service (IRS) in the assessment and collection of federal taxes. Brian was also convicted of three counts of filing false income tax returns, in violation of 7206(1), while Mark was convicted of three counts of aiding and assisting the preparation of false income tax returns, in violation of 7206(2). The District Court sentenced Brian to 22 months imprisonment and ordered restitution in the amount of $1,202,475.58. Mark was sentenced to 14 months imprisonment and ordered to pay $50,000 in restitution.

> United States v. McAllister, 2022 U.S. Dist. LEXIS 95142 (E.D. Mo., 5/27/2022)
> McAllister pled guilty to three counts of 7206(2). Defendant's conviction was based on her preparation of thirty-nine fraudulent tax returns on behalf of clients of her tax preparation business. The relevant conduct was $920,854, but the tax losses were restricted $205,093 for purposes of the sentencing guidelines calculations. On June 30, 2021, the Court sentenced McAllister to 37 months incarceration, one year of supervised release, special assessment of $300, and restitution of $920,854.

> United States v. Brooks, 2017 U.S. Dist. LEXIS 112064 (E.D. Mo., 6/5/2017)
> Brooks pled guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. Section 371 and two counts of aiding and assisting in the preparation of a false income tax return in violation of 7206(2). Brooks was sentenced to 18 months incarceration, three years supervised release, a special assessment of $100 on each of the three counts, and restitution of $99,273.

In each of the cases listed above, the defendants received a lower sentence than the one Cobb received, and in each case the evaluation of the 3553(a) factors supported the sentence issued in each case. Here Cobb argues that his suggested sentence of 30 months incarceration would indeed: consider the nature and circumstances of his offense; consider Cobbs history and characteristics; consider the need to reflect the seriousness of the offense in the right proportion, to promote respect for the law, and provide just punishment, not greater than necessary and not disproportionate when compare to other similarly situated defendants; etc.

Although Cobb does not presents this point as an ineffective assistance of counsel, Mr. Kilgore made an additional error that prejudiced Cobb. Mr. Kilgore failed to present, prior to sentencing and at sentencing, important facts that would serve as character references for this Court to consider as it evaluates the 3553(a) factors. Cobb now presents the following facts in preparation for his resentencing.

Prior to Cobb's indictment and during the conviction procedures, he was working for the Coach T Foundation, coaching at risk youth in St. Louis, MO. He took kids from the inner city and rural areas and created High School summer basketball travel teams that played in front of collage coaches to obtain collage scholarships. Cobb was working with the American Legion Baseball Association, to implement the first African American Legion Baseball Post (Tom Powell) in the city of St. Louis, MO. The program also was to also to include ACT prep-work, nutritional enrichment, and community volunteering with veterans, to be held at various veteran homes in the metropolitan area. Cobb also gave the young men in the Harris-Stowe baseball program an opportunity to obtain summer jobs through an organization called Perfect Game. At perfect game Cobb was the Umpire in charge training as well as providing jobs for 80 people (ages 14-17). Cobb also was working with Harris Stowe University and the St. Louis Cardinals, assisting the school in the process of getting the state to recognize their baseball facility as a historical landmark, because it was the home of the St. Louis Stars Negro League. Furthermore, Cobb also volunteered in the Missouri Youth Sports Association, serving as head official for youth football games. While volunteering at Missouri Youth Sports, Cobb also assisted with preparing the fields for games for the youth (5-13 years old). Cobb indeed made the best of his time while out on bail during the conviction procedures. Cobb not only complied with all his pre-conviction release conditions, but also maintained employment and continued serving his community. However, this was not mentioned at sentencing.

During Cobb's current incarceration, he has actively pursued multiple rehabilitation opportunities offered at his Federal Correctional Facility in Pekin, IL. Cobb has completed a Cognitive Skills Program, an Anger Management Program, A Financial Management Class, Traumatic Stress and Resilience Program, and a Parenting Program. Cobb has completed multiple self study enrichment programs offered from the education and recreation departments. Cobb is currently in the process of participating in the Threshold

13

Program, a non-residential cognitive-behavioral-treatment program, intended to teach participants to apply principles of their faith to various life areas, and to reduce recidivism. He is currently employed as a GED Math Tutor and a Suicide Prevention Companion. Cobb has maintain a clear disciplinary record while incarcerated and has paid all his financial obligations as scheduled.

Upon his release, Cobb intends to relocate to the metropolitan Dallas, TX area and live with his spouse at their home. Cobb intends to work as a Over the Road (OTR) driver, as well as studying to obtain a degree in Sociology in order to become a counselor for at-risk-youth. On his free time, Cobb intends to continue helping to mentor youth through involvement in sports and education. Cobb also intends to complete the projects he was involved with in his home state of Missouri, assisting with the programs mentioned above from Harris Stowe University. Cobb will make sure to meet all his financial obligations to the Federal Government by paying his restitution as scheduled, and complying with all probation expectations. Finally, Cobb will not reoffend in any way and will live a crime free life and never return to prison.

## CONCLUSION

In this 2255 motion to vacate, set aside, or correct Cobb's sentence, Cobb has sufficiently demonstrated that his counsel, Mr. Kilgore, was indeed ineffective. Mr. Kilgore's failure to investigate, object, or argue that Cobb was improperly assessed Criminal History points and Criminal History Category before sentencing, at sentencing, and on appeal, were errors that were so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and had it not been for Mr. Kilgore's errors, Cobb would have received a lower sentence.

Cobb has requested an evidentiary hearing because factual disputes exist, and he also requested the appointment of counsel to represent him on the required evidentiary hearing and resentencing arrangement that would follow. However, Cobb has presented a resentencing agreement that would save precious resources from this honorable Court, the Government, and tax payers. Cobb would wave his request for an evidentiary hearing and appointment of counsel if the Government and this Court agree to

14

resentence him under the guideline range of 30-37 month of imprisonment. Cobb suggest that a 30 month sentence would fulfill all the 3553(a) factors unique to this case. Perhaps Cobb's plea is best made in the words of Presiding Abraham Lincoln, who said, "I have always found that Mercy bears richer fruits than strict justice." Here Cobb, as a 53 year old man pursuing rehabilitation and with intentions to continue being a positive asset to his community upon release, respectfully asks this Court for the same merciful justice spoken about by president Lincoln.

Respectfully Submitted,

*[signature]*  Date: 7/23/24

Darius D. Cobb #97101-509
FCI Pekin
P.O. Box 5000
Pekin, IL 61555

15

## CERTIFICATE OF SERVICE

I, Darius D. Cobb, hereby certify that on this 23 day of July, 2024, I did place three copies of the enclosed "MOTION FOR RELIEF UNDER 28 U.S.C. SECTION 2255", in the prison's certified mailing system addressed to:

Clerk of the Court
United States District Court
111 S. Tenth Street,
St. Louis, MO 63102

Furthermore, I hereby certify that I did place one copy of the enclosed "MOTION FOR RELIEF UNDER 28 U.S.C. SECTION 2255", in the prison's certified mailing system addressed to:

Jennifer J. Roy
United States Attorneys Office
111 S. Tenth Street, 20th Floor
St. Louis, MO 63102

Signed under the penalty of perjury this 23 day of July, 2024.

_____
Darius D. Cobb #97101-509
FCI Pekin
P.O. Box 5000
Pekin, IL 61555